# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| BUTLER MANUFACTURING COMPANY, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. 05-0437-CV-W-FJG<br>) |
| BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

# ORDER

Currently pending before the Court is Blue Cross and Blue Shield of Texas' Motion for Summary Judgment (Doc. # 46), Blue Cross and Blue Shield of Texas' Motion in Limine to Exclude a Portion of Butler Manufacturing's Proposed Expert Report and Testimony (Doc. # 61); Gerber Life Insurance Company's Motion to Strike Experts (Doc. # 63); Blue Cross and Blue Shield of Texas' Motion in Limine to Exclude Gerber Life Insurance Company's Proposed Expert Report and Testimony (Doc. # 65); Gerber Life Insurance Company's Cross Motion for Summary Judgment (Doc. # 67); Butler Manufacturing Company and Connecticut General Life Insurance Company's Motion for Summary Judgment (Doc. # 71); Gerber Life Insurance Company's Motion for Leave to File Rebuttal Affidavit of Robert Comeau (Doc. # 77); Blue Cross and Blue Shield of Texas' Motion for Leave to File Sur-Reply to Gerber Life Insurance Company's Reply (Doc. # 96).

## I. BACKGROUND

This case focuses on which parent's insurance plan is primarily liable to pay the medical expenses of their son when the parents are divorced. Michael Richardson and Julie Ann Richardson were divorced in 1993. At the time of the divorce, they had two minor sons. The Texas Divorce Decree named Michael Richardson as the Sole Managing Conservator. The decree states that he shall have all the rights, privileges, duties, and powers of a parent, subject only to the rights, privileges, duties and powers granted to any possessory conservator. Julie Ann was named as sole Possessory Conservator. The decree states that she shall have the following rights, privileges, duties and powers:

> 1. Duty of care, control, protection and reasonable discipline during periods of possession; 2. Duty to provide the children with clothing, food, and shelter during periods of possession; 3. Power to consent to medical and surgical treatment during an emergency involving an immediate danger to the health and safety of the children during periods of possession; 4. Right of access to medical, dental and educational records of the children to the same extent as the Sole Managing Conservator; 5. Right to Consult with any treating physician or dentist of the children and 6. Right to consult with school officials concerning the children's welfare and educational status, including school activities.

Julie Ann was ordered to pay child support of $50.00 per month to Michael Richardson. Kyle Richardson resided with his father from 1993 until 1999. From 1999 until his death in 2003, he lived with his mother. However, the divorce decree was never amended to reflect this change in custody.

Michael Richardson was an employee of Butler Manufacturing and was a participant in the Butler Plan at all times. Plaintiff Connecticut General Life Insurance Company provides claim administrative services for self-insured health plans including

the Butler Plan pursuant to an Administrative Services Agreement. Butler insured the Butler Plan and maintained stop-loss coverage through defendant Gerber Life Insurance Company under an Excess Loss Insurance policy. Kyle Richardson was a covered dependent through the Butler Plan and was also a covered dependent under this mother's plan - R&R Marine Fabrication and Drydock. The R&R Plan was insured by BlueCross & BlueShield of Texas ("BCBSTX").

A Coordination of Benefits ("COB") provision in a health care insurance contract governs the priority and payment of benefits when two plans provide coverage for the same person.

**The Butler Plan** provided:

> If a person is covered under two or more plans, the rules that follow will decide the order in which the plans will pay benefits: . . .
>
> . . . However, if the person is a dependent child of divorced or separated parents, the order will be as follows:
>
> a. If the parent with custody has not remarried, his or her plan will pay before the plan of the parent without custody.
> b. If the parent with custody has remarried, his or her plan will pay before the plan of the stepparent or the parent without custody; and the plan of the stepparent will pay before the plan of the parent without custody.
>
> However, if there is a court decree which sets forth a financial duty for the health care expenses of the child, the plan of the parent with the financial duty will pay first.

**The R & R Plan** provided:

> This plan determines its order of benefits using the first of the following rules which applies: . . .
>
> c. Dependent child/parents separated or divorced. If two or more Plans

3

cover a Participant as a Dependent child of divorced or separated parents, benefits for the child are determined in this order:

    (1) First, the Plan of the parent with custody of the child;

    (2) Then, the Plan of the spouse of the parent with custody, if applicable;

    (3) Finally, the Plan of the Parent not having custody of the child.

However, if the specific terms of a court decree state that one of the parents is responsible for the health care expense of the child, and the entity obligated to pay or provide the benefits of the Plan of that parent has actual knowledge of those terms, the benefits of that Plan are determined first. The Plan of the other parent does not apply with respect to any Calendar Year during which any benefits are actually paid or provided before the entity has that actual knowledge.

From approximately July 2003 through December 2003, Kyle Richardson received medical treatment from various health care providers. His medical claims exceed $990,000.

In late July 2003, BCBSTX began adjudicating claims for medical services provided to Kyle Richardson under the R&R Plan. In late July, BCBSTX learned that claims for medical services for Kyle Richardson may be covered through Michael Richardson's health plan administered by Connecticut General. In late July 2003, BCBSTX requested that Julie Richardson provide it with a copy of the Divorce Decree. In early February 2004, BCBSTX determined that pursuant to the COB provision in the R&R Plan, the Butler Plan was primarily liable to pay the health care expenses of Kyle Richardson because the Divorce Decree granted Michael Richardson sole legal custody of Kyle and therefore Michael Richardson was the "parent with custody" under the COB provision of the Plan.

Connecticut General, as claims administrator for the Butler Plan, adjudicated

claims for medical services provided to Kyle Richardson and paid nearly all of the claims for Kyle Richardson which exceeded $990,000.

On October 18, 2005, Butler Manufacturing and Connecticut General Life Insurance Company filed an Amended Complaint.  In their Complaint the plaintiffs allege four counts.  Count I - Declaratory Judgement against BCBSTX.  Plaintiffs are asking for a declaration that BCBSTX is primarily responsible under the R&R Plan. Plaintiffs are asking the Court to determine that BCBSTX must pay the remaining unpaid claims and for plaintiff's attorney fees.  Count II - Unjust Enrichment against BCBSTX.  Plaintiffs are asking for a judgment requiring BCBSTX to reimburse plaintiffs for any and all overpayments.  Count III - Restitution, Constructive Trust and Accounting against BCBSTX and Count IV- Breach of Contract against Gerber Life Insurance Company.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986).  In Matsushita Electric  Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment

5

"must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### III. DISCUSSION

**A. BCBSTX's Motion for Summary Judgment**

BCBSTX argues that because the divorce decree awarded sole custody to Michael Richardson, he is the "parent with custody" and thus under the COB provisions of the Plan, the Butler Plan is primarily liable. BCBSTX states that in resolving disputes, courts examine the COB provisions of both plans to determine if they can give effect to the plain language of both provisions. If the meaning of the COB provisions are not in conflict, then the courts will enforce them as written. In this case, the COB provisions of both plans are the same and state that the "parent with custody" has the primary responsibility to pay those benefits. Applying the plain language interpretation, BCBSTX argues that the term "parent with custody" means the parent who is awarded custody of the child by the court - which would be the father, Michael Richardson. Thus, BCBSTX argues that the Butler Plan is primarily liable. BCBSTX also argues that extrinsic evidence also supports its argument that "parent with custody" means the parent who is awarded custody. BCBSTX relies on National Association of Insurance Commissioner's Model COB Regulation for support of this argument. However, the

6

Court need only reach this issue if we find that the COB provisions are ambiguous and there is a need to resort to outside evidence.

The oppositions of the other parties (Connecticut General, Butler and Gerber) all focus on the fact that the Court should examine the issue from the standpoint of a layperson and what would a layperson understand the phrase "parent with custody to mean"? The other parties argue that: 1. Kyle lived with his mother during the entire time of his illness; 2. Kyle had lived with his mother for the vast majority of time prior to his illness; 3. While he was living with her, she had the duty to take care of him and to consent to his receiving medical care and treatment; 4. She listed Kyle as a dependent on her tax return. Thus, the other parties argue that a layperson would clearly understand that Julie Ann Richardson was the "parent with custody." The other parties state that the average layperson would not understand that a parent with whom a child had resided for the previous four years is not the "parent with custody" merely because this parent was not labeled the "sole managing conservator" in the divorce decree.

The other parties also argue that if the meaning cannot be determined by reference to the clause alone, then the court should examine the entire document to determine the intent. These parties argue that it is plain from the language in both Plans that the drafters were using the phrase, "parent with custody" in the same manner that the IRS uses "custody" for tax purposes. These parties argue that both Plans specifically reference the tax code in the section where it defines dependents. Under the tax code, these parties argue that the "parent with custody" of a child is the parent with whom the child shares a principal place of abode for the greater portion of a calendar year. Thus, they argue, because Kyle lived with his mother for the greater part

7

of the year, and because she claimed him as a dependent on her taxes, she is the parent with custody and BCBSTX's plan is primary.

In McCurl v. Teamsters Local 560 Trucking Employees of North New Jersey Welfare Fund, 925 F.Supp. 280 (D.N.J. 1996), the Court stated:

> Unfortunately, however ERISA does not contain a coordination of benefits provision and offers no explicit guidance as to how disputes involving conflicting coordination of benefits clauses are to be resolved. Left with these sorts of legislative "gaps" that plague ERISA, it has become incumbent upon the federal courts to develop a "federal common law of rights and obligations under ERISA-regulated plans." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987). . . . When interpreting provisions in competing ERISA plans, the judicial task is first to determine from the contracts themselves what obligations the respective obligor intended to assume and then to determine whether these intentions are compatible not only each with the other but also with the insured's right and expectations and with the controlling demands of public policy. . . . In the ERISA context, courts should give effect to the intent of the trustees of the competing benefit plans, as evidenced by their incorporation of other insurance provisions, if the provisions are compatible, unless doing so results in the enforcement of a provision that conflicts with the language or the policies of ERISA. . . . Thus, this court's analysis must begin with an examination of the intent of the parties, as evidenced through the language of the parties' plan documents. If that examination reveals that the two plans are mutually repugnant, that is, that the court cannot simultaneously give effect to the *plain* language of both plans, this court then must resolve the conflict under the federal common law of ERISA-covered employee benefit plans.

Id. at 285 (internal citations and quotations omitted). See Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147 (3d Cir. 1985)(same). Additionally, the Eighth Circuit in Brewer v. Lincoln Nat. Life Insur. Co., 921 F.2d 150 (8th Cir. 1990), cert. denied, 501 U.S. 1238 (1991), stated, "[i]t would be improper and unfair to allow experts to define terms that were specifically written for and targeted toward laypersons. This requirement provides a source from which we may fashion a federal common law rule; the terms should be accorded their

8

ordinary, and not specialized, meanings." Id. at 154.

In reviewing the two COB provisions at issue, the Court does not find that they are in conflict. Both plans COB provisions state that the parent with custody of the child shall pay first. Additionally, the plans also state that if the terms of a court decree set forth a financial duty for the health care expenses of the child, then the plan of the parent with the financial duty will pay first. In the instant case, the Divorce Decree granted custody to Michael Richardson. The Decree also states that Michael Richardson shall have all the rights, privileges, duties and powers of a parent, subject only to the rights, privileges, duties and powers granted to Julie Richardson, during the times that she had possession of the children. The provision of health care coverage is one of the duties of a parent. The Divorce Decree also clearly granted custody to Michael Richardson. Although the parties may have agreed among themselves to a different living arrangement for their son Kyle, the Divorce Decree was never officially modified. Giving the terms of the Divorce Decree its plain, ordinary meaning, it is apparent that Michael Richardson was the parent who had custody of Kyle, and thus the Butler Plan is primarily responsible for Kyle's medical bills. As the Court has determined that the terms in the two plans are not ambiguous, there is no need to resort to extrinsic evidence such as the National Association of Insurance Commissioner's model COB regulation or to the reports of expert witnesses. Additionally, as the Court has determined that Butler is primarily liable for the medical expenses, plaintiffs are not entitled to the relief from Blue Cross and Blue Shield of Texas that they requested in Counts II and III.

## IV. CONCLUSION

Accordingly, the Court hereby **GRANTS** Blue Cross and Blue Shield of Texas' Motion for Summary Judgment (Doc. # 46), **DENIES** Gerber Life Insurance Company's Cross Motion for Summary Judgment (Doc. # 67) and **DENIES** Plaintiff Butler Manufacturing Company and Connecticut General Life Insurance Company's Motion for Summary Judgment (Doc. # 71). The Court also **DENIES as MOOT** Blue Cross and Blue Shield's Motion in Limine to Exclude a Portion of Butler Manufacturing's Proposed Expert's Report and Testimony (Doc. # 61); **DENIES as MOOT** Gerber Life Insurance Company's Motion to Strike Experts (Doc. # 63); **DENIES as MOOT** Blue Cross and Blue Shields' Motion in Limine to Exclude Plaintiff Gerber's Proposed Expert Report and Testimony (Doc. # 65); **DENIES as MOOT** Gerber's Motion for Leave to File Rebuttal Affidavit of Robert Comeau (Doc. # 77) and **GRANTS** Blue Cross and Blue Shield's Motion for Leave to File Sur-Reply (Doc. # 96).

Date: November 27, 2006  **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
United States District Judge

10